WEINTRAUB ZOLKIN TALERICO & SELTH LLP
Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
David B. Zolkin (State Bar No. 155410)
dzolkin@wztslaw.com
11766 Wilshire Blvd., Suite 450
Los Angeles, CA  90025
Telephone:     (310) 207-1494

Sean N. Egan (Utah Bar No. 07191)
seannegan@sneganlaw.com
Second + State – Suite 775
215 South State Street
Salt Lake City, UT 84111
Telephone:  (801) 363-5181

Attorneys for Plaintiff Larada Sciences, Inc.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>LARADA SCIENCES, INC.,<br><br>              Reorganized Debtor. | Case No. 9:21-bk-10269-DS<br><br>Chapter 11<br><br>Adv. No. |
| LARADA SCIENCES, INC.,<br><br>              Plaintiff,<br><br>v.<br><br>BALLARD SPAHR, LLP,<br><br>              Defendant. | **COMPLAINT** |

1

COMES NOW plaintiff Larada Sciences, Inc., the reorganized debtor in the above-indicated chapter 11 case ("Larada"), to complain and allege against Ballard Spahr, LLP ("Ballard" or "the Firm") as follows:

**PARTIES**

1. Larada Sciences, Inc. is a Delaware corporation with its principal place of business in Salt Lake County, Utah. It is one of the debtors and debtors-in-possession in the above-captioned jointly administered bankruptcy.

2. Ballard Spahr, LLP is a limited liability partnership which is headquartered in Philadelphia, Pennsylvania. The Firm provides legal services throughout the United States. It has an office in Salt Lake City, Utah.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this adversary proceeding which arises under Title 11, arises in, and relates to cases under Title 11 in the United States Bankruptcy Court in the Central Division for the Central District of California, Northern Division captioned In re Larada Sciences, Inc., Case No. 9:21-bk-10269-DS, pursuant to 28 U.S.C. §§ 157 and 3334(b).

4. The statutory and legal predicates for the relief herein are §§ 105, 502, 506, 510, 541, 542, and 544 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure.

5. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (E) and the Court may enter final orders for matters contained herein.

6. Venue is proper in the Central District of California, Northern Division pursuant to 28 U.S.C. § 1409.

7. Regardless of whether this proceeding is core, non-core or otherwise, Larada consents to the entry of a final order and judgment by the Court. Defendants are hereby notified that Bankruptcy Rule 7008 requires defendants to plead whether consent is given to the entry of a final order and judgment by the Court.

**BACKGROUND ALLEGATIONS**

8. Larada manufactures and markets devices for the treatment of head lice through a proprietary method of applying heated air to the scalp. Although heated air had previously been shown to kill body lice and eggs, one of Larada's founders was the first to demonstrate the effectiveness of heated air on head lice and eggs. It was not until the development of Larada's devices (a process that took years) that a commercially viable method was found to kill head lice and eggs through the application of heated air in specific temperature ranges and applied in a specific way. Larada in conjunction with the University of Utah secured patents both for the treatment method as well as the Larada device.

9. Larada currently grants licenses to use its device and related products in the operation of independent head lice treatment clinics pursuant to license agreements and franchise agreements. These clinics operate in defined, exclusive territories, and the vast majority of clinics were formed specifically for the purpose of licensing and using Larada's technology, which was the only FDA cleared and effective heated air product for head lice treatment on the market.

10. On or about November 16, 2010, Larada entered into a lease agreement with Pediatric Hair Solutions Corporation ("PHS"). The co-founders of PHS were Dr. John Fassler and his wife Sheila Fassler. This lease agreement was executed by Sheila Fassler, who also personally guaranteed "full performance and payment of all obligations . . . including, without limitation, the covenants not to compete, or disclose confidential trade information and agreed to be personally bound thereby." The purpose of the agreement was to lease the initial version of the Larada device (the "1.0 Device").

11. On or about August 31, 2015, Larada and PHS entered into a series of license agreements which allowed PHS to continue using the 1.0 Device at numerous clinics operated by PHS in Georgia, South Carolina, North Carolina and Ohio.

12. At the same time it entered into these license agreements with PHS, Larada entered into a consulting agreement with Dr. John Fassler pursuant to which he became national medical director for Larada's Lice Clinics of America Network. Dr. Fassler entered into the consulting agreement in his individual capacity.

13. During the course of its relationship with the Fasslers and PHS, Larada had occasion to share confidential and proprietary business information as well as technical information provided pursuant to the license agreements and related arrangements. The Fasslers' use and dissemination of such information was strictly constrained by the agreements they had executed with Larada.

14. In January 2017, the Fasslers intentionally stopped paying PHS invoices, saying they were doing it on the advice of their accountant. When Larada put them on notice of default and gave them 10 days to cure, PHS's attorney sent Larada a letter demanding that Larada either lower PHS's treatment fees or give them a full refund on the initial fees it paid for the license agreements. In February 2017, Larada engaged Ballard to help Larada resolve its conflict with PHS and the Fasslers.

15. Unbeknownst to Larada at the time, PHS and the Fasslers had been attempting to duplicate a knock-off of Larada's patented device for a number of months so that they could compete with Larada in stark violation of the license agreement. In addition, PHS and the Fasslers had approached Larada franchisees to solicit interest in joining PHS in an enterprise to directly compete with Larada.

16. In July 2017, when Larada discovered what PHS and the Fasslers had been doing and attempting to do behind Larada's back, Larada asked Ballard to expand the scope of its legal counsel and representation. Specifically, Larada wanted to pursue litigation to vindicate its rights under its patents as well as to protect its interests under the agreements it had with the Fasslers.

17. Larada ultimately received counsel from two Ballard partners, Richard W. Miller, Esq. ("Miller") and Jason E. Boren, Esq. ("Boren") regarding PHS and the Fasslers. Miller was responsible for pursing patent infringement issues while Boren was responsible for addressing other issues pertaining to any other claims Larada might have. From the outset, Miller and Boren, among other attorneys at Ballard, failed to see that Larada had strong claims under trade secret laws and that Larada had claims to significant damages as well as attorney's fees. Instead the Firm devoted almost all of its attention to the patent infringement issues.

18. In June 2018 Ballard filed a patent infringement action in North Carolina against PHS on behalf of Larada, Case No. 3:18-cv-00320 (W.D. N.C.) (the "Patent Case"). It did not bring any other claims Larada had against PHS or the Fasslers.

19. In July 2018, Ballard filed an action against PHS in Utah Federal Court, Case No. 2:18-cv-00551 (D. Utah) (the "Utah Case"). In this case, Larada brought claims for breach of contract, Lanham Act violations and some common law claims (the "Utah Complaint"). It did not bring an action for trade secret misappropriation and it did not bring a claim against Dr. Fassler for breach of the consulting agreement or Mrs. Fassler for breach of her guarantee of the lease agreement.

20. In June 2019, PHS filed three Inter Partes Review ("IPR") petitions on Larada's owned and licensed patents to, essentially, challenge the validity of those patents. Ballard directed Larada to Marc S. Segal, Esq. who had only had three years of experience in such matters.

21. Meanwhile, Ballard was doing little if anything to advance the Utah Case including matters such as promulgating written discovery or pursuing depositions. Nor did Ballard take any steps to improve the Utah Complaint it had filed against PHS to plead claims that it overlooked, in particular claims under trade secret laws. Indeed, even after receiving evidence establishing that PHS was reverse engineering Larada's patented technology and after being told that John Fassler was personally liable on the consulting agreement, Ballard still refused to amend the Utah Complaint to bring appropriate claims. Instead, it continued to devote its attention to the Patent Case.

22. After the Patent Trial and Appeal Board ("PTAB") granted PHS's petition Larada replaced Marc Segal with another attorney, Steven C. Sereboff, Esq. of SoCal IP Group ("Sereboff"). However, given the difficulty of prevailing at a trial before the PTAB once an IPR petition has been granted, PTAB ruled in January 2021 that all three of Larada's owned and licensed patents were invalid.

23. As a result of Ballard's inadequate handling of the IPR process along with its deficient Utah Complaint, the Patent Case was crippled beyond repair and Larada's new counsel handling the Utah Case has had to replead Larada's claims so that all the causes of action actually available to Larada were included in the operative Utah Complaint.

24. Ballard's management and prosecution of Larada's claims against PHS and the Fasslers fell well below the standard of care for such actions. These failures constituted a breach of Ballard's duties to Larada.

25. Larada also retained Ballard to represent it in perfecting security interests in favor of approximately 29 separate debt holders in the aggregate principal amount of approximately $4 million (the "Subdebt Holders"). For reasons that Ballard has never explained, it filed UCC financing statements for only 17 of the 29 Subdebt Holders. When Larada discovered this failure through a UCC search it conducted in October 2020, it corrected Ballard's mistake by paying another attorney to file UCC financing statements for the 12 Subdebt Holders that Ballard had inexplicably missed.

26. Notwithstanding these failures, Ballard has filed a proof of claim against Larada in this bankruptcy seeking $469,736.49 in supposedly unpaid legal fees. Larada has already paid Ballard $95,809.57 for PHS related invoices generated from February 2017. Ballard is not entitled to any more money than Larada has paid and indeed Larada is entitled to reimbursement from Ballard in the amount of $95,809.57.

## COUNT I

### (Breach of Fiduciary Duty)

27. Larada repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 26 of its Complaint.

28. Ballard and its attorneys had a fiduciary duty to act in the utmost good faith and loyalty towards Larada and to place Larada's interests above their own in connection with the services it was providing Larada. In particular, Ballard had a duty to see that Larada's best interests were observed by pursuing trade secret claims in Utah rather than patent claims in North Carolina.

29. Based on the allegations set forth in this Complaint, Ballard has breached those duties.

30. As a result of Ballard's breach of fiduciary duty, Larada has been damaged in an amount to be proven at trial but no less than $95,809.57 for PHS related invoices generated from February 2017 reflecting the money already paid to Ballard.

31. The actions and omissions of Ballard were undertaken in bad faith and were in wanton indifference towards and reckless disregard of Larada's rights, thereby entitling Larada to an award of punitive or exemplary damages.

## COUNT II

### (Negligence)

32. Larada repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 31 of its Complaint.

33. Ballard had a duty to manage and prosecute Larada's claims in a manner that met or exceeded the standard of care applicable to attorneys bringing claims of the sort Ballard was pursuing on behalf of Larada. This duty including being competent and diligent in the areas which were the subject of representations.

34. As a result of the conduct alleged herein, Ballard has breached that duty to Larada. Its actions, inactions and omissions in the management and prosecution of Larada's claims fell well below the applicable standard of care.

35. As a result of Ballard's breach of duty, Larada has been damaged in an amount to be proven at trial but no less than $95,809.57 for PHS related invoices generated from February 2017 reflecting the amount of money already paid to Ballard.

36. The actions and omissions of Ballard were undertaken in bad faith and were in wanton indifference towards and reckless disregard of Larada's rights, thereby entitling Larada to an award of punitive or exemplary damages.

## COUNT III

### (Disallowance of Claim and Avoidance and Subordination of Alleged Attorneys' Lien)

37. Larada repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 36 of its Complaint.

38. On June 14, 2021, Ballard filed a proof of claim in the Bankruptcy Court pursuant to 11 U.S.C. § 501 in the amount of $469,736.49 alleging this amount was due and owing as unpaid legal fees.

39. This claim is without legal or factual merit for the reasons set forth herein, including that Ballard has not provided services to Larada equivalent to that amount and that Ballard breached its legal and fiduciary duties to Larada with respect to services it both provided and failed to provide.

40. Larada objects to Ballard's claim and seeks an order disallowing it pursuant to Bankruptcy Rule 3007 and any other applicable statute or rule.

41. To the extent that Ballard's claim is allowed notwithstanding this objection to its claim, the alleged attorneys' lien securing that claim is subject to avoidance pursuant to Bankruptcy Code § 544 and subordination pursuant to Bankruptcy Code § 510(c) because:

   a. The alleged services provided do not relate to the claims which are the alleged subject of the lien;

   b. Ballard's services were deficient as described above;

   c. Ballard breached its fiduciary duties to Larada as described above;

   d. The claim allegedly subject to Ballard's lien is subject to the senior secured claim formerly held by Alignment Debt Holdings 1, LLC ("Alignment"), accordingly pursuant to Bankruptcy Code § 506 Ballard's claim is entirely unsecured;

   e. Because Larada was required to retain replacement counsel resulting from Ballard's deficient services as described above, Larada's replacement counsel is senior in priority to Ballard's alleged attorneys' lien, which is accordingly entirely unsecured pursuant to Bankruptcy Code § 506; and

   f. Under principles of equitable subordination, Ballard's alleged lien should be subordinated to all other claims against Larada pursuant to Bankruptcy Code § 510(c) because it engaged in inequitable conduct as described above, which inequitable conduct relates directly to its alleged secured claim against Larada; which resulted in injury to Larada's creditors (and conferred an unfair advantage on Ballard), and equitable subordination of Ballard's claim is consistent with the Bankruptcy Code.

42. Pursuant to Bankruptcy Code § 502(d), because Ballard's alleged secured claim is subject to avoidance under Bankruptcy Code § 544, and Ballard has not relinquished its avoidable transfer, its claim must be disallowed.

WHEREFORE, Larada respectfully requests the following relief:

1. With respect to Count I, damages, including punitive or exemplary damages, in an amount to be proven at trial;

2. With respect to Count II, damages, including punitive or exemplary damages, in an amount to be proven at trial;

3. An Order disallowing Ballard's claim of June 14, 2021, and also avoiding Ballard's alleged lien, or alternatively subordinating Ballard's alleged lien to all other claims against Larada;

4. All pre- and post-judgment interest as may be allowed by law;

5. All costs and fees, including reasonable attorney's fees, as may be allowed under law; and

6. Any and all other relief this Court deems just and proper.

DATED: March 3, 2023    WEINTRAUB ZOLKIN TALERICO & SELTH LLP

By: /s/ Derrick Talerico
    Derrick Talerico
    David B. Zolkin

and

Sean N. Egan (Utah Bar No. 07191)
Second + State – Suite 775
215 South State Street
Salt Lake City, Utah 84111-2969

Attorneys for Plaintiffs Larada Sciences, Inc.,